UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TYQUAN T. STEWART,<br><br>        Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,<br><br>        Defendant. | CAUSE NO.: 1:20-CV-44-TLS |

**OPINION AND ORDER**

The Plaintiff Tyquan T. Stewart seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) failed to properly evaluate the medical opinion evidence of record in formulating the Plaintiff's residual functional capacity (RFC). For the reasons set forth below, the Court finds that reversal and remand is required for further proceedings.

**PROCEDURAL BACKGROUND**

On June 30, 2017, the Plaintiff filed an application for supplemental security income, alleging disability beginning on March 8, 2016. *See* AR 251, ECF No. 10. The claim was denied initially and on reconsideration, and the Plaintiff requested a hearing, which was held before an ALJ on June 4, 2018. *Id*. On September 20, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* at 251–60. The Plaintiff filed a request for review, and, on October 29, 2018, the Appeal Council remanded the case to the ALJ for further proceedings. *Id.* at 267. A hearing was held on March 7, 2019, and a supplemental hearing was held on September 16, 2019. *Id.* at 65, 148. A different ALJ issued an unfavorable decision on October 17, 2019. *Id.* at

17–28. On November 26, 2019, the Appeals Council denied the Plaintiff's request for review, *id.* at 1–3, thereby rendering the ALJ's decision the final decision of the Commissioner. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On January 24, 2020, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief [ECF No. 14], the Commissioner filed a response brief [ECF No. 17], and the Plaintiff filed a reply brief [ECF No. 18].

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 30, 2017, the application date. AR 19.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe

impairments of post-traumatic stress disorder ("PTSD"), depression, schizoaffective disorder, personality disorder, a history of gunshot to the abdomen, and diabetes. AR 19.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 20.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's RFC, which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, crouch and crawl. The claimant can understand, remember and carry out simple instructions and tasks, he can make judgments on simple work related decisions, he can respond appropriately to occasional interactions with coworkers and supervisors, he should avoid work activity requiring interactions with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting.

AR 22.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff "is capable of performing past relevant work as an assembler, production,

706.687-010, SVP 2, light per DOT and as performed." AR 27. And, as a result, the ALJ found that the Plaintiff had not been under a disability since June 30, 2017. *Id.* Thus, the ALJ did not reach step five, which is applicable if the claimant is unable to perform his past relevant work and the ALJ determines whether the claimant can "make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v), (g). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a

"critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ erred by failing to address the more restrictive limitations contained in the opinion of state agency reviewing psychologists, the testifying medical expert, and the consultative psychological examiner. Remand is required for proper consideration the opinions.

The mental portion of the residual functional capacity finding assigned by the ALJ provides:

> The claimant can understand, remember and carry out simple instructions and tasks, he can make judgments on simple work related decisions, he can respond appropriately to occasional interactions with coworkers and supervisors, he should avoid work activity requiring interactions with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting.

AR 22.

In reviewing a disability claim, an ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 416.920c(a), (b). Medical opinions are considered under the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c)(1)–(5).

**A.     State Agency Reviewing Psychologists**

State agency physicians are deemed, by regulation, to be "highly qualified and experts in Social Security disability evaluation," and their opinions must be considered by the ALJ in the disability determination process. *See* 20 C.F.R. § 416.913a(b)(1) (citing 20 C.F.R. §§ 416.920b, 416.920c, 416.927). In this case, the Plaintiff argues that the ALJ erred by failing to consider the more restrictive limitations in the "check box" or "worksheet" section of the state agency reviewing psychologists' opinions. The "worksheet observations" from the state agency psychological consultants are "medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). While an ALJ may rely on a consultative psychologist's narrative description, the ALJ "still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the [Psychiatric Review Technique] and [Mental Residual Functional Capacity] forms."

*DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)).

In this case, state agency consultative reviewing psychologists Dr. Donna Unversaw and Dr. Joelle Larson completed a Mental Residual Functional Capacity Assessment form on September 6, 2017, and November 1, 2017, respectively. *See* AR 227–29, 242–44. The narrative portion of the opinions provide that the Plaintiff "appears capable of unskilled tasks on a sustained basis without special considerations. He would perform best in situations that do not require constant contact with peers, supervisors, or customers." *Id*. at 229, 244. In response to the more specific functional assessment ratings, both doctors opined, as relevant here, that the Plaintiff is "moderately limited" in his ability to "carry out detailed instructions," "maintain attention and concentration for extended periods," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "get along with coworkers or peers *without distracting them or exhibiting behavioral extremes*." *Id*. at 228–29, 243–44 (emphasis added).

Although the ALJ found the state agency determinations to be "somewhat persuasive," *id.* at 27, the ALJ neither discussed these specific functional limitations nor accounted for them in the RFC assessment. Instead, the ALJ noted generally that the state agency opinion is "consistent with limitations in all four areas of mental functioning, but not to exactly [the] same extent noted by the evaluators." *Id*. The ALJ's only specific comment was that the state agency opinion "is consistent with the claimant performing best when he has *reduced* interaction with others." *Id*. (emphasis added). Based on the ALJ's analysis, the Court cannot determine whether the ALJ accounted for the Plaintiff's social deficits and propensity for social extremes.

7

The failure to discuss the more specific social limitations contained in the worksheet section of the opinions is harmful because the ALJ did not include them in the hypothetical to the vocational expert who subsequently testified to a lack of employer tolerance for any exhibition of "behavioral extremes" with supervisors or coworkers. *Id.* at 93–94. In the RFC, the ALJ only addressed the amount of time the Plaintiff could interact socially in a given day, finding that the Plaintiff "can respond appropriately to *occasional* interactions with coworkers and supervisors" and have *no* interactions with the general public. *Id.* at 22 (emphasis added). In this context, "occasionally" means "from very little up to one third" of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). The Plaintiff reasons that this quantitative limitation fails to address the more specific limitation that the Plaintiff would exhibit inappropriate workplace behaviors, specifically a limitation in his ability "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 228–29, 243–44. It is unclear how such a limitation can be addressed by limiting the Plaintiff's exposure to supervisors and coworkers to one-third of the day, when the behavioral extremes do not appear to occur only after a specific amount of contact.

Importantly, the reviewing consultative psychologists are not the only medical sources to opine on this limitation. Consultative psychologist Dr. Predina, who examined the Plaintiff on February 20, 2017, opined that the Plaintiff's anger and anxiety would hinder his ability to get along with supervisors and coworkers. *Id.* at 882. At the March 7, 2019 hearing, medical expert Dr. Hamilton testified that the Plaintiff has moderate limitations in his ability to respond appropriately to supervision, coworkers, and the general public. *Id.* at 74. And, more specifically, Dr. Hamilton testified as to the likelihood of an occurrence of "impulsive behaviors," explaining that the Plaintiff would be triggered "when he doesn't get what he is expected to get either in

terms of a verbal response or a service of some sort." *Id*. at 83–84. As discussed more in the next section, Dr. Hamilton gave conflicting testimony in relation to this limitation, stating that the Plaintiff would be prone to outbursts if criticized by a supervisor in the work context whereas he would have less conflict with the public, *see id*. at 83–84, 86, 95, but also opining that Plaintiff can have only occasional interaction with supervisors and coworkers but frequent interaction with the general public, *see id.* at 75–76. Yet, the ALJ found Dr. Hamilton's hearing testimony to be "persuasive." *Id*. at 26. Notably, the Plaintiff appears to have displayed this very behavior at the March 2019 hearing when the Plaintiff interrupted Dr. Hamilton's testimony, describing the trauma he had suffered in his life and yelling profanities. *Id.* at 79–81. The Plaintiff was eventually removed from the proceedings. *Id*. at 81.

Although the ALJ found the state agency psychologists' opinions persuasive, their narrative assessments did not "encapsulate" the worksheet observations discussed above. *See Varga*, 794 F.3d at 816. The narrative assessment opines that the Plaintiff "would perform best in situations that do not require constant contact with peers, supervisors, or customers," but such a limitation does not account for conduct demonstrating behavioral extremes as opined in the worksheet section. AR 229, 244. Importantly, upon questioning by the Plaintiff's attorney, the vocational expert testified that exhibitions of such behaviors would not likely be tolerated by employers more than once. *Id.* at 93–94. The vocational expert also testified that, if the individual could not tolerate redirection or instruction, resulting in behavioral extremes, no positions would be available. *Id*. at 93. Thus, it appears that, if the ALJ had included such a limitation regarding behavioral extremes, all work may have been excluded, resulting in a finding of disability.

By failing to discuss the more specific limitations by the state agency reviewing psychologists that were not otherwise included in their narrative opinions, the ALJ failed to build a logical and accurate bridge between the evidence and the RFC. *See Beardsley*, 758 F.3d at 839 (explaining that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step" (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003))). Remand is required for proper consideration of the Plaintiff's behavioral extremes and the impact on the Plaintiff's ability to work.

The Plaintiff also argues that the ALJ should have specifically addressed the state agency consultative reviewing psychologists' opinions that the Plaintiff has moderate limitations in the ability to "maintain attention and concentration for extended periods" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 228, 243. Although the Plaintiff is correct that the ALJ did not specifically discuss these two limitations, these specific opinions are "encapsulated" in the narrative portion of the state agency opinions, which provide that the Plaintiff "appears capable of unskilled tasks on a sustained basis without special considerations." *Id*. at 229, 244. Thus, remand is not required on this basis.

**B.     Testifying Medical Expert Dr. Hamilton**

The Plaintiff next argues that the ALJ erred by rejecting portions of testifying medical expert Dr. Hamilton's opinions that were suggestive of disability despite the ALJ's finding that Dr. Hamilton's testimony was persuasive. *Id.* at 26. "An ALJ cannot rely only on the evidence that supports her opinion." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th

Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009))).

The Plaintiff identifies several contradictions in the testimony from Dr. Hamilton who opined that the Plaintiff has moderate limitations in responding appropriately to supervision, coworkers, and the general public. AR 74. First, the ALJ relied on Dr. Hamilton's testimony that the Plaintiff's behavior was under his own control "99 percent of the time" and could be "very appropriate" when it benefitted him but failed to reconcile this with Dr. Hamilton's testimony that his psychological impairments caused him to be "impulsive." *Id.* at 25, 77–78, 83. Second, the ALJ noted Dr. Hamilton's testimony that personality disorders can "be treated successfully" but did not acknowledge Dr. Hamilton's testimony that the Plaintiff's "anti-social personality disorder" would actually be "made worse" by treatment. *Id.* at 25, 79. The ALJ did not address Dr. Hamilton's testimony, discussed above, that the Plaintiff would be prone to explosive behavioral extremes when "he is hearing things or you know, being asked to do things that he doesn't like" or "when he doesn't get what he is expected to get either in terms of a verbal response or a service of some sort." *Id.* at 83, 84.

Dr. Hamilton testified that the Plaintiff should not interact with the general public but could respond appropriately to occasional interactions with supervisors and coworkers. *Id.* at 86. However, on questioning by the Plaintiff's attorney about the ability to tolerate communication with supervisors, coworkers, and the general public, Dr. Hamilton testified:

> I do think that [the Plaintiff] is more likely to have problems with people who are in authority. So, for example, a customer or you know, if he were working in an environment like that he was pretty, you know, that's over and done with pretty quickly. But a supervisor who is in a position to . . . render some criticism might be more a target of the anger.

*Id.* at 95. The ALJ does not discuss this testimony and concludes, without explanation and in apparent contradiction to Dr. Hamilton's testimony, that the Plaintiff can never interact appropriately with the general public but can interact with supervisors occasionally.

The Plaintiff notes that, when asked by the ALJ during the hearing how often the Plaintiff can "respond [appropriately] or tolerate exposure, interactions with say supervisors," Dr. Hamilton initially responded, "20% of the time." *Id.* at 75. The Plaintiff argues that the RFC for contact "occasionally" with supervisors and coworkers, which means up to one third-of the eight-hour workday, is more than twenty percent of the work day and that the ALJ does not address this inconsistency. However, the ALJ asked Dr. Hamilton to translate the twenty-percent figure to the scale used for functional ability, and Dr. Hamilton chose "occasionally." *Id*. at 75–76. Although this clarification makes it appear that there is no contradiction in the testimony, twenty percent of the day is less than "up to one-third" of the day.

Finally, the ALJ stated that the RFC is "even more restrictive than Dr. Hamilton's assessment." *Id.* at 26. The Plaintiff argues that this incorrect because the ALJ did not account for any event in which the Plaintiff would exhibit intolerable social behaviors directed at supervisors or coworkers, such as the very type of event that occurred during the hearing with the Plaintiff's outburst during Dr. Hamilton's testimony and his removal from the building. As discussed in the previous section, Dr. Hamilton's testimony, like the state agency psychologists' opinions, suggests that the Plaintiff would exhibit inappropriate social behaviors in response to either authority figures or coworkers as a result of his psychological impairments. And, the vocational expert testified that such a limitation would not be tolerated more than one time by employers. *Id.* at 93–94.

On remand, the ALJ must address and reconcile, if necessary, these apparent contradictions in Dr. Hamilton's testimony.

**C.    Consultative Examiner Dr. Predina**

Finally, the Plaintiff argues that the ALJ erred by failing to confront the February 2017 opinion of state agency consultative psychological examiner Dr. Predina that the Plaintiff would have difficulty getting "along with supervisors and coworkers due to his anger, and anxiety." *Id.* at 882. In her decision, the ALJ found Dr. Predina's opinion to be "somewhat persuasive." *Id.* at 26. The ALJ noted Dr. Predina's opinion that the Plaintiff "would likely struggle to get along with others," which the ALJ found to be supported by Dr. Predina's findings and to be consistent with the evidence of record. *Id.* The Plaintiff argues that this opinion is consistent with the opinions of the state agency reviewing physicians as well as Dr. Hamilton's testimony, yet the ALJ failed to incorporate relevant limitations. The Plaintiff reasons that Dr. Predina's opinion contains no quantitative restriction on this limitation based on the amount of time spent with others per workday. The Plaintiff also notes that Dr. Predina observed such behavior during the consultative examination, where the Plaintiff "became agitated and stated he felt rage coming on and wanted to leave. He agreed to just a few more questions and then he left." *Id.* at 880. The ALJ observed similar conduct by the Plaintiff at the hearing where he had an outburst during Dr. Hamilton's testimony and was eventually asked to leave. *Id.* at 80–81. On remand, the ALJ will have an opportunity to include these specific aspects of Dr. Predina's opinion regarding the Plaintiff's mental limitations regarding interactions with supervisors and coworkers.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 15] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on November 18, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
